UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20340-CIV-WILLIAMS/SANCHEZ

MARIA ELENA MIGOYO,

    Plaintiff,

v.

MERRICK B. GARLAND,[1]
United States Attorney General, *et al.*,

    Defendants.
_____/

### **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this case, Plaintiff Maria Elena Migoyo seeks judicial review, pursuant to 8 U.S.C. § 1421(c), of the denial of her application for naturalization by U.S. Citizenship and Immigration Services ("USCIS"). ECF No. 1. The matter is now before the Court on Defendants' Motion for Summary Judgment, ECF No. 42, which seeks denial of Migoyo's application for naturalization.

The issue presented is whether Migoyo is ineligible to be naturalized because she was not lawfully admitted for permanent residence in 2004. More specifically, the issue is whether Migoyo was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), and therefore not lawfully admitted for permanent residence in 2004, because when traveling to the United States in 2001 under the Transit Without Visa ("TWOV") program, she used a fake passport that misrepresented her nationality to travel to the United States and had no intent to continue traveling to her ticketed destination outside the United States.

---

[1] The case style now reflects Attorney General Merrick B. Garland as the first named defendant in accordance with Fed. R. Civ. P. 25(d), which provides that, "when a public officer who is a party in an official capacity . . . ceases to hold office," "[t]he officer's successor is automatically substituted as a party."

Following a careful review of Defendants' motion, Migoyo's response (ECF No. 43), Defendants' reply (ECF No. 45), the pertinent portions of the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that Defendants' Motion for Summary Judgment, ECF No. 42, be **GRANTED**.

## I. FACTS

Migoyo is a native and citizen of Cuba. ECF No. 42-1 (Defendants' Statement of Undisputed Material Facts) at ¶ 1; ECF No. 43-1 (Plaintiff's Statement of Undisputed Material Facts) at ¶ 1. On or about December 2, 2001, Migoyo arrived at Miami International Airport aboard a flight from Sao Paulo, Brazil via the TWOV program. ECF No. 42-1 at ¶¶ 2, 22; ECF No. 43-1 at ¶¶ 2, 22; ECF No. 1 at ¶ 16; *see also* ECF No. 43 at 11 ("The truth of her use of the TWOV program . . . was voluntarily disclosed."). The flight had a final destination of Montego Bay, Jamaica. ECF No. 42-1 at ¶¶ 9, 18; ECF No. 43-1 at ¶¶ 9, 18. To board the flight and travel via the TWOV program, Migoyo used a Paraguayan passport bearing the assumed name of "Maria Pane de Meza" and a false date of birth. ECF No. 42-1 at ¶ 7; ECF No. 43-1 at ¶ 7.

Under the TWOV program, "[a] passport and visa [we]re not required of an alien who [wa]s being transported in immediate and continuous transit through the United States" en route to a specifically designated foreign country. 8 C.F.R. § 212.1(f)(1) (2001). An alien utilizing the TWOV program, however, was required to be "in possession of a travel document or documents establishing his/her identity and nationality and ability to enter some country other than the United States." *Id.* Cuban citizens were barred from using the TWOV program. 8 C.F.R. § 212.1(f)(3) (2001) ("This waiver of passport and visa requirement is not available to an alien who is a citizen of . . . Cuba . . . .").

2

Although she traveled to the United States using a Paraguayan passport, Migoyo has never been a citizen or national of Paraguay. ECF No. 42-1 at ¶ 8; ECF No. 43-1 at ¶ 8. She purchased her fraudulent Paraguayan passport and other documents, including airline tickets for a trip to Jamaica, from parties she regarded as "mafia"; she did not obtain those documents from the Paraguayan government or an airline. ECF No. 42-1 at ¶¶ 9, 12-13; ECF No. 43-1 at ¶¶ 9, 12-13. Additionally, Migoyo's fraudulent passport contained no United States visa and did not otherwise enable admission into the United States, ECF No. 42-1 at ¶ 27; ECF No. 43-1 at ¶ 27, and the photograph on the passport was not Migoyo's, ECF No. 42-1 at ¶ 14; ECF No. 43-1 at ¶ 14. Migoyo accordingly followed instructions that she had been given to dye her hair to match the hair color of the person whose photograph appeared on the passport. ECF No. 42-1 at ¶ 14; ECF No. 43-1 at ¶ 14. Although Migoyo traveled to Miami with plane tickets having Jamaica as her final destination, ECF No. 42-1 at ¶ 18; ECF No. 43-1 at 18, Migoyo never intended to travel to Jamaica or anywhere outside of the United States; she intended to remain in the United States. ECF No. 42-1 at ¶¶ 5, 11; ECF No. 43-1 at ¶¶ 5, 11.

When she arrived in Miami, Migoyo sought out an immigration representative and disclosed her true identity and that she was a Cuban citizen who wanted to stay in the United States. ECF No. 43-1 at ¶¶ 44-46; ECF No. 45 at 3 ¶¶ 44-46. A U.S. government official took Migoyo's testimony under oath, and Migoyo disclosed that she had traveled on a Paraguayan passport that had not been issued to her by Paraguayan authorities, and she requested to remain in the United States based on her Cuban citizenship. ECF No. 43-1 at ¶¶ 45-46; ECF No. 45 at 3 ¶¶ 45-46. Shortly after her arrival, Migoyo was paroled into the United States effective December 2, 2001. ECF No. 42-1 at ¶ 28; ECF No. 43-1 at ¶ 28.

In 2004, the government approved Migoyo's application for adjustment of her status to that of a Legal Permanent Resident ("LPR") with a rollback date of December 2, 2002.  ECF No. 42-1 at ¶ 31; ECF No. 43-1 at ¶ 31.  When she applied for permanent residence, Migoyo did not apply for a waiver of inadmissibility.  ECF No. 42-1 at ¶ 30; ECF No. 43-1 at ¶ 30.

In 2011, Migoyo applied for naturalization, which was denied by USCIS in 2012 on the grounds that she was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) and that her adjustment had therefore been erroneous, rendering her ineligible for naturalization.  ECF No. 42-1 at ¶ 32; ECF No. 43-1 at ¶ 32.  In 2013, Migoyo again applied for naturalization, which USCIS denied for the same reason as in 2012.  ECF No. 42-1 at ¶ 33; ECF No. 43-1 at ¶ 33.  Migoyo thereafter sought administrative review of that decision, and USCIS affirmed the denial of naturalization.  ECF No. 42-1 at ¶ 34; ECF No. 43-1 at ¶ 34.

On January 29, 2016, Migoyo filed a complaint pursuant to 8 U.S.C. § 1421(c) seeking *de novo* review of the denial of her application for naturalization, thereby commencing the instant action.  ECF No. 1.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022).

4

The existence of a factual dispute by itself is not enough to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004)); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("For factual issues to be considered genuine, they must have a real basis in the record.") (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

### III.   DISCUSSION

"In order to succeed on a petition for naturalization, an alien must meet the statutory requirements for citizenship set out in 8 U.S.C. § 1427." *Bueno v. USCIS Kendall Field Off.*, 809 F. App'x 651, 654 (11th Cir. 2020); *see also Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1257 (11th Cir. 2016) (citing *Fedorenko v. United States*, 449 U.S. 490, 505-06 (1981)). These statutory requirements require an alien to show, among other things, that they were "lawfully admitted for permanent residence" in the United States. 8 U.S.C. § 1427(a) (providing that no person shall be naturalized unless the person has satisfied, *inter alia*, continuous residency requirements "after being lawfully admitted for permanent residence"); *see also, e.g.*, 8 U.S.C. § 1429 ("Except as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."); *Reganit*, 814 F.3d at 1257; *Bueno*, 809 F. App'x at 654. The burden is on the applicant to show compliance with this requirement. *See Berenyi v. Dist. Dir. INS*, 385 U.S. 630, 637 (1967).

Being "lawfully admitted for permanent residence," means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20); *see also Savoury v. U.S. Att'y Gen.*, 449 F.3d 1307, 1313-18 (11th Cir. 2006) (holding that "lawfully admitted for permanent residence" means an alien's adjustment to LPR status must have been "in compliance with the substantive requirements of the law").  At the time USCIS adjusted Migoyo's status to LPR, moreover, the Immigration and Nationality Act ("INA") provided that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter" is inadmissible.  8 U.S.C. § 1182(a)(6)(C)(i).  Under this statutory framework, an alien who was inadmissible under § 1182(a)(6)(C)(i) at the time of her adjustment of status has not been lawfully admitted to the United States for permanent residence.  *See Savoury*, 449 F.3d at 1313 (holding that the award of permanent resident status to an inadmissible alien "was not consistent with the law; it was not lawful; it was not 'in accordance with the immigration laws'") (quoting 8 U.S.C. § 1101(a)(20)); *see also* 8 U.S.C. § 1255(a) (allowing adjustment of status to that of an "alien lawfully admitted for permanent residence" if, *inter alia*, "the alien is . . . admissible to the United States for permanent residence").

Accordingly, the issue to be resolved on summary judgment in this case is whether Migoyo was inadmissible under § 1182(a)(6)(C)(i), and therefore not "lawfully admitted for permanent residence" when USCIS adjusted her status in 2004, because she, by fraud or by willfully misrepresenting a material fact, had procured a benefit provided under the INA.[2]  If Migoyo

---

[2] Defendants have only sought summary judgment on the basis that Migoyo was inadmissible under § 1182(a)(6)(C)(i) because she procured an "other benefit" under the INA—use of the

6

procured an "other benefit" provided under the INA by fraud or by willfully misrepresenting a material fact, then she was not "lawfully admitted for permanent residence" in 2004, and she is ineligible to be naturalized. *See* 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20).

The Court reviews Migoyo's eligibility for naturalization "de novo," making "its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c); *see also Bueno*, 809 F. App'x at 654 ("A district court reviews the denial of an application for citizenship *de novo*."). When addressing summary judgment motions, that *de novo* review occurs within the legal framework governing summary judgment.

### A. There Is No Genuine Dispute as to Any Material Fact

Migoyo argues that the Court should deny Defendants' motion because "there is a genuine issue of material fact as to [her] eligibility for naturalization, specifically whether or not [she] met the prerequisite of lawfully adjusting her status to that of a permanent resident." ECF No. 43 at 2; *see also id.* at 13. "Under Rule 56, the initial burden is on the party seeking summary judgment to identify the portions of the record that it believes show the absence of a genuine issue of material fact and to show that it is entitled to judgment as a matter of law." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160 (11th Cir. 2022); *see also, e.g.*, *Anglin v. BI LO, LLC*, No. 22-13912, 2023 WL 6232511, at *2 (11th Cir. Sept. 23, 2023) (per curiam) ("The party that moves for summary judgment bears the initial burden of establishing that there is no genuine issue of material

---

TWOV program—by fraud or willful misrepresentation of a material fact. *See, e.g.*, ECF No. 42 at 4-6, 15; ECF No. 45 at 5, 7. Accordingly, although Migoyo has argued that § 1182(a)(6)(C)(i) did not render her inadmissible on the different grounds that she procured either admission into the United or a visa or other documentation by fraud or willful misrepresentation of a material fact, *see* ECF No. 43 at 6-8, this Report and Recommendation does not reach and address those additional issues because they are immaterial to the question of whether Migoyo obtained an "other benefit" under the INA by fraud or willful misrepresentation of a material fact.

7

fact."). "[W]hen the moving party has carried its burden," then the non-moving party must "show the existence of a genuine issue of material fact in order to avoid summary judgment." *Edmondson*, 43 F.4th at 1160; *see also, e.g.*, *Anglin*, 2023 WL 6232511, at *2 ("Once the movant meets that burden, the burden shifts to the nonmovant who must 'present affirmative evidence' of a genuine issue of material fact.") (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 257 (1986)).

Here, the Defendants have met their burden of establishing that there is no genuine issue of material fact. The underlying facts that are determinative of whether Migoyo was or was not inadmissible under § 1182(a)(6)(C)(i)—that is, whether she procured an "other benefit" under the INA by fraud or by willfully misrepresenting a material fact—are the undisputed facts set forth earlier involving Migoyo's travel to the United States under the TWOV program using a fraudulent Paraguayan passport that misrepresented her identity and nationality and airline tickets to Jamaica that she never intended to use to travel beyond the United States. The issue as to which Migoyo claims there is a dispute of fact, that is, "whether or not [she] met the prerequisite of lawfully adjusting her status to that of a permanent resident," is a legal question not a factual dispute, and that question is resolved by the undisputed facts discussed above. To the extent that Migoyo disputes any of the additional facts in Defendants' Statement of Material Facts, such disputes involve facts that do not "affect the outcome of the case," and as such, are not material. *Harrison v. Culliver*, 746 F.3d at 1298; *compare, e.g.*, ECF No. 42-1 at ¶ 15 *with* ECF No. 43-1 at ¶ 15 *and* ECF No. 45 at 2 ¶ 15 (whether Migoyo knew that her Cuban passport would not enable her to reach the United States prior to her trip to Paraguay or after arriving in Paraguay does not affect the outcome of the case). Given the questions presented on summary judgment, Migoyo has failed

to meet her burden of showing the existence of a genuine issue of material fact. *See Edmondson*, 43 F.4th at 1160; *Anglin*, 2023 WL 6232511, at *2.

  B. *Whether Migoyo Procured an "Other Benefit" by Fraud*

  Defendants contend that "Migoyo was inadmissible because she used fraudulent means—a fake Paraguayan passport—and made material misrepresentations in order to . . . obtain the immigration benefit of TWOV status." ECF No. 42 at 2. More specifically, Defendants argue that, by using a fraudulent Paraguayan passport, Migoyo obtained an immigration benefit within the meaning of 8 U.S.C. § 1182(a)(6)(C)(i)—access to participate in the INA-authorized Transit Without Visa ("TWOV") program that allowed her to travel to the United States without a visa—by fraud or willful misrepresentation because the TWOV program was unavailable to her as a Cuban citizen. *See, e.g.*, ECF No. 42 at 10; ECF No. 45 at 5.

  The INA authorizes the Attorney General to enter into agreements with airlines (and other transportation lines) "to guarantee the passage through the United States in immediate and continuous transit of aliens destined to foreign countries," 8 U.S.C. § 1223(c) (previously codified at 8 U.S.C. § 1228), and it further authorizes the waiver of visas for "aliens proceeding in immediate and continuous transit through the United States" under such agreements, 8 U.S.C. § 1182(d)(4)(C). In 2001, the TWOV program, which implemented § 1182(d)(4)(C), provided that "[a] passport and visa [we]re not required of an alien who [wa]s being transported in immediate and continuous transit through the United States" en route to a specifically designated foreign country. 8 C.F.R. § 212.1(f)(1) (2001). An alien utilizing the TWOV program, however, was required to be "in possession of a travel document or documents establishing his/her identity and nationality and ability to enter some country other than the United States." *Id.* Cuban citizens

9

were barred from using the TWOV program. 8 C.F.R. § 212.1(f)(3) (2001) ("This waiver of passport and visa requirement is not available to an alien who is a citizen of . . . Cuba . . . .").

Given this legal framework, it is apparent that participation in the TWOV program—which allows aliens to travel to the United States without obtaining a visa—is a benefit that was provided under the INA for aliens who met the qualifications set forth in 8 C.F.R. § 212.1(f). Indeed, courts that have considered the question, including the Eleventh Circuit, have concluded that participation in the TWOV program is a "benefit" provided under the INA that falls within the scope of 8 U.S.C. § 1182(a)(6)(C)(i). *See Kurt v. Att'y Gen.*, 252 F. App'x 295, 298 (11th Cir. 2007) (holding that an alien who purchased an airline ticket with a destination outside of the United States "made a material misrepresentation (his final destination) in order to obtain a benefit under the Act (the benefit of TWOV status)"); *Ymeri v. Ashcroft*, 387 F.3d 12, 19-20 (1st Cir. 2004) (holding that "the privilege of traveling as transit without visa participants" constituted a "benefit under the Immigration laws").

Here, Migoyo only points to a 2007 decision by the USCIS Administrative Appeals Office ("AAO") to support her contention that the TWOV program is not an "other benefit" within the meaning of § 1182(a)(6)(C)(i). ECF No. 43 at 8; *see In re: [Redacted]*, 2007 WL 5352539 (USCIS Admin. Appeals Office Oct. 30, 2007). There, the AAO found that an applicant who "presented herself as a TWOV en route to Spain during the boarding and paperwork processes" but who "immediately requested asylum" upon entering the MIA airport transit lounge was not inadmissible. *In re: [Redacted]*, 2007 WL 5352539, at *2. The AAO concluded that because "her commission of fraud occurred only *en route* to the United States" and not "at the time of her admission," she had not engaged in "the type of misrepresentation covered by [§ 1182(a)(6)(C)]." *Id.* But that AAO interpretation of § 1182(a)(6)(C)(i)—that the statute does not cover fraud that

"occur[s] only *en route* to the United States"—finds no support in the language of the statute. Moreover, the AAO's interpretation puts the AAO decision directly at odds with the Eleventh Circuit in *Kurt*, which concluded that "the use of a misrepresentation to obtain TWOV status constitutes fraud, *even when it is not made to an officer of the United States*, because a TWOV alien does not meet a U.S. officer until he arrives in the United States and *the damage is already done*." 252 F. App'x at 298 (emphasis added); *see also Ymeri*, 387 F.3d at 19 n.4 ("An alien who transits through this country as a transit without visa participant has obtained one of the benefits listed in in § 1182(a)(6)(C)(i) . . . ."). [3] Notwithstanding Migoyo's arguments, the undersigned concludes, in accordance with *Kurt* and *Ymeri*, that use of the TWOV program is an "other benefit" within the meaning of § 1182(a)(6)(C)(i). [4]

Further, Migoyo argues that her adjustment to LPR status in 2004 was done "not

---

[3] While Migoyo also argues that fraud and misrepresentations made to an airline rather than to government officials does not fall within the scope of § 1182(a)(6)(C)(i) and that a timely retraction absolves her of any misrepresentations she made to the airline, *see* ECF No. 43 at 9-11, those arguments fail for similar reasons. As an initial matter, the language of § 1182(a)(6)(C)(i) does not confine the fraud and misrepresentations made to obtain an "other benefit" under the INA to fraud and misrepresentations made to a government officer. *See Kurt*, 252 F. App'x at 298 (concluding that "the use of a misrepresentation to obtain TWOV status constitutes fraud, *even when it is not made to an officer of the United States*") (emphasis added). Furthermore, Migoyo's fraud was already completed and the TWOV benefit under the INA was already procured when Migoyo misrepresented herself to the airline and was able to use the TWOV program to travel to the United States. Any retraction made to government officials after she arrived in the United States and had already obtained the benefit of the TWOV program through fraud and material misrepresentations of fact is immaterial—and certainly not timely—because "the damage [wa]s already done." *Kurt*, 252 F. App'x at 298.

[4] Migoyo's arguments concerning statutory amendments to the INA that replaced "entry" with "admission," *see* ECF No. 43 at 8-9, are of no moment in addressing the Defendants' summary judgment motion, regardless of how meaningful those amendments may have been in other contexts. Those amendments simply have no impact on the issues in these summary judgment proceedings, which address only whether Migoyo procured an "other benefit provided under this chapter" by fraud or material misrepresentation of fact.

11

mistakenly, but consistent with all applicable law in 2004." ECF No. 43 at 3.  In particular, Migoyo points to data from the *Bueno* case that led the Eleventh Circuit to recognize what amounted to a de facto government policy—that is, a policy that "allow[ed] TWOV Cuban nationals to obtain legal permanent resident status rather than conclude that the use of TWOV by Cubans qualified as fraud," *Bueno*, 809 F. App'x at 655—to argue that her adjustment to LPR status in 2004 was not a mistake, and thus lawful, despite the language of § 1182(a)(6)(C)(i) and her prior use of a fraudulent Paraguayan passport with another's name, birthdate, and photograph, to misrepresent her nationality and thereby gain access to the TWOV program to travel to the United States on an airline ticket on which she was supposed to continue traveling to Jamaica.  *See* ECF No. 43 at 11-13; *see also id.* at 13 (arguing that she and "the hundreds of Cubans whose applications were approved were not statuor[il]y barred" and "the case law at the time of the approval . . . allowed for the approval of those adjustment of status applications").

Nevertheless, "[w]hat is lawful depends on the law and not on administrative inadvertence or error."  *Savoury*, 449 F.3d at 1317.  Thus, although immigration authorities may have been misapplying 8 U.S.C. § 1182(a)(6)(C)(i) in 2004, as well as before that, and may have believed that they were applying § 1182(a)(6)(C)(i) in accordance with the law, the governing statutory provision was the same in 2004 as it was in *Kurt* and *Ymeri* and as it is today.  And under the language of § 1182(a)(6)(C)(i), the TWOV program was an "other benefit" provided under the INA, whether or not courts had yet issued opinions judicially announcing that the TWOV program was a "benefit" that fell within the meaning of the language of § 1182(a)(6)(C)(i).  *Kurt* and *Ymeri* interpreted § 1182(a); they did not change it.  Thus, if the TWOV "other benefit" was obtained by Migoyo by fraud or by willfully misrepresenting a material fact, then she was inadmissible in 2004 under the language of 8 U.S.C. § 1182(a)(6)(C)(i); she was not "lawfully admitted for permanent

12

residence" "in accordance with law"; and she is ineligible to be naturalized. *See Savoury*, 449 F.3d at 1313; 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20), 1255(a).

Here, the undisputed facts establish that Migoyo obtained TWOV status in 2001 by fraud and willful misrepresentation of material facts: Migoyo willfully used a fraudulent Paraguayan passport that materially misrepresented her identity and nationality and concealed her Cuban citizenship, as well as an airline ticket with a final destination of Jamaica, despite her intent not to continue traveling to Jamaica after arriving in the United States. *See also United States v. Kavazanjian*, 623 F.2d 730, 738 (1st Cir. 1980) ("We agree that the aliens, by arriving as TWOVs with no intention of effecting an orderly and expeditious departure, were guilty of fraud or misrepresentation.").

Given these undisputed facts, Migoyo was inadmissible in 2004 under 8 U.S.C. § 1182(a)(6)(C)(i), she was not "lawfully admitted for permanent residence," and she is ineligible to be naturalized. *See Savoury*, 449 F.3d at 1313; 8 U.S.C. §§ 1427(a), 1429, 1182(a)(6)(C)(i), 1101(a)(20), 1255(a).

## IV.  CONCLUSION

Here, Migoyo was ineligible to be naturalized because, by fraud and willful misrepresentation of material facts, she procured participation in the TWOV program, a benefit under the INA, to get to the United States in 2001. As a result, she was inadmissible under the INA, she did not apply for a waiver of inadmissibility, and her adjustment to permanent residence in 2004 was therefore not lawful and not in accordance with the law. Accordingly, USCIS correctly denied Migoyo's naturalization application.

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Defendants' Motion for Summary Judgment, ECF No. 42, be **GRANTED**.

Within fourteen (14) days from the date of receipt of this Report and Recommendation, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in chambers in Miami, Florida, this 4th day of August 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Kathleen M. Williams
Counsel of Record